# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re** <br><br> MICHAEL S. COLVIN and <br> VALAREE THUESON COLVIN, <br><br> **Debtors.** | **Case No. 04-42331-JDP** <br> **Chapter 7** |
| R. SAM HOPKINS, Trustee, <br><br> **Plaintiff,** <br><br> **vs.** <br><br> SARATOGA HOLDINGS, LLC, <br> an Idaho limited liability <br> company; JASON R. RAMMELL, <br> and BRIAN BALL, members, <br><br> **Defendants.** | **Adversary Proceeding** <br> **No. 07-8045** |

## MEMORANDUM OF DECISION

**Appearances:**

Daniel C. Green, RACINE OLSON NYE BUDGE & BAILEY, CHARTERED, Pocatello, Idaho, Attorney for Plaintiff.

Kipp Manwaring, Idaho Falls, Idaho, Attorney for Defendants.

MEMORANDUM OF DECISION - 1

### *Introduction*

Plaintiff, chapter 7 trustee R. Sam Hopkins, commenced this adversary proceeding against Defendants Saratoga Holdings, LLC, Jason R. Rammell and Brian Ball on March 30, 2007.  Docket No. 1.  A trial in this action was conducted by the Court on October 18, 2007, at which time the parties submitted testimony and documentary exhibits into evidence.  At the conclusion of the trial, the parties submitted closing arguments in post-trial briefs, which have now been filed.  Docket Nos. 34-36.  The issues were then taken under advisement for decision.

The Court has considered the evidence, the arguments of the parties, as well as the applicable law, and now renders the following decision.  This Memorandum constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052.[1]

---

[1] All section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, as they existed prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 108-9, 119 Stat. 23 (Apr. 20, 2005), because Debtors' bankruptcy case was commenced prior to BAPCPA's effective date of October 17, 2005.

MEMORANDUM OF DECISION - 2

### *Findings of Fact*

Rammell, Ball and Michael S. Colvin[2] formed a limited liability company they named Saratoga Holdings, LLC ("Saratoga") to operate a World Gym franchise in Idaho Falls, Idaho. Trial Tr. p. 8-9. The Articles of Incorporation for Saratoga were filed with the Idaho Secretary of State on July 17, 2003. Colvin was appointed to serve as Saratoga's manager. Ex. 1. Initially, Ball held a 40 percent equity interest in Saratoga, while Rammell and Colvin held 30 percent each. Trial Tr. at 9.

Between July, 2003 and May, 2004, the business needed cash infusions from the owners. Calls for additional capital contributions were made by Saratoga at least once per month, and the members were expected to contribute according to their percentage of ownership interest. Trial Tr. at 14-15. While Ball and Rammell did so, it is unclear whether Colvin made any financial contributions to the company.[3]

---

[2] Ball, Rammell and Colvin are related by marriage: Ball and Colvin's wives are sisters, and Rammell's wife is the cousin of the sisters. Trial Tr. at 36-37.

[3] During trial, Ball was asked whether Colvin made contributions equaling his 30 percent share, and replied, "I assume so, but I can't confirm it." Trial Tr. at 15. In the "Operating Agreement of Saratoga Holdings, LLC" ("Operating Agreement"), the parties to the agreement, Ball and Rammell, recited that "Capital contributions originally made by Mr. Colvin have been acquired by Mr.

MEMORANDUM OF DECISION - 3

At some time prior to May, 2004, Colvin was unable to honor the calls for new capital, and Rammell and Ball began to make up the difference each month. Trial Tr. at 16. The resulting situation came to a head in May, 2004, when the three owners met to discuss Colvin's failure to respond to his capital contribution obligations. At that time, Colvin apparently expressed a desire to the others to be relieved of his financial obligations to Saratoga.[4] In an attempt to address this predicament, a

---

Ball and Mr. Rammell under separate agreement." Ex. 4, ¶ 3.1. Finally, when cross-examined during trial about Colvin's capital contributions, Ball testified as follows:

> The capital contributions that were made, or supposedly made by the Colvins, were never – we could not document these contributions. Mr. Colvin's wife kept the books and we couldn't track it down. And in an effort to repair family relations we didn't go back to prove how many pennies or dollars were actually put into the business, so we kept [Paragraph 3.1 of the Operating Agreement] pretty vague.

Trial Tr. at 32. Colvin was not present and did not testify at the trial. His deposition was not introduced or admitted into evidence.

[4] At the May, 2004 meeting there was also some discussion about what, if any, interest Colvin retained in Saratoga at that time, because his capital account was "severely in the negative, so there was a dispute if [Colvin and his wife, Valaree] had any ownership interest at that time because of their lack of capital contributions." Trial Tr. at 19. This issue appears to never have been fully resolved, but the Court need not address it here.

MEMORANDUM OF DECISION - 4

contract was drafted by Rammell, an attorney, which provided in pertinent part:[5]

> WHEREAS, Saratoga Holdings, its agents or assigns, is desirous to buy and Michael Colvin, his agents or assigns, is desirous to sell his interest in Saratoga Holdings;
>
> THEREFORE, for good and valuable consideration enumerated below, Saratoga Holdings, its agents or assigns, agrees to buy and Michael Colvin, his agents or assigns, agrees to sell his asset interest in Saratoga Holdings under the following terms:
>
> 1. $45,000.00 payable in equal monthly installments beginning April 01, 2006. An interest rate of 4% on the outstanding balance will apply and interest will begin to accrue as of April 01, 2006 and said principal amount, along with interest, shall be amortized over 36 months and expired on the date of last payment, being March 01, 2009. Furthermore, Saratoga Holdings is entitled to a $5,000.00 pre-payment discount if payment in full is made before April 01, 2006.
>
> It is specifically agreed by both parties that the ongoing success of the business is vital to the performance of this contract. Therefore, it is mutually agreed that Michael Colvin, his agents,

---

[5] Aside from two other recitals, these quoted provisions represent the entire text of the contract.

MEMORANDUM OF DECISION - 5

> assigns, and immediate family members will do nothing to hinder, delay, slander or tarnish in any way the reputation of Saratoga Holdings, its owners or agents. It is further mutually agreed that violation of this clause is grounds for termination of this contract. It is further mutually agreed that from the date of this contract Michael Colvin, his agents or assigns, does hereby rescind any ownership interest he may have in Saratoga Holdings.

Ex. 2. The contract is dated May 25, 2004, and was signed by Rammell, Ball and Colvin. Belatedly, Ball and Rammell followed up the contract with a document entitled "Articles of Amendment to Articles of Organization Limited Liability Company." Ex. 3. In that document, filed with the Secretary of State's office on April 26, 2006, Colvin was deleted as a member of the company, and Ball was named the manager of Saratoga. *Id*. The testimony at trial established that the April, 2006 amendment was intended by the parties to memorialize what they had agreed to in the May 25, 2004 contract, and was designed to allow Colvin to fully cut the ties and liability he had to Saratoga. Trial Tr. at 20.

    It is undisputed that, after this agreement was made, Colvin left Saratoga and worked in the human resources department at Melaluca in

MEMORANDUM OF DECISION - 6

Idaho Falls.[6]  It is also undisputed that Saratoga never paid any money to Colvin under the terms of the contract.  Trial Tr. at 11.

At a family Thanksgiving dinner, presumably in 2006[7], Colvin and Ball had a conversation during which Colvin's activities in hiring employees for Melaluca were discussed.  The undisputed testimony shows that, sometime after May, 2004, Colvin spoke to several key World Gym employees in order to "lure them over to Melaluca so that [Ball and Rammell] would have to find other help in Rexburg."[8]  Trial Tr. at 26.

In addition, sometime in the Spring of 2007, Ball confronted Colvin at another family gathering concerning allegations that Colvin had sponsored a rumor in the community that Ball intended to file for bankruptcy.  Trial Tr. at 28.  During that conversation, Ball described Colvin as "pretty apologetic" and he testified that Colvin admitted when he

---

[6] It is unclear whether Colvin worked at Melaluca prior to his affiliation with Saratoga.  Regardless, the evidence indicates that he no longer is employed by Melaluca, but works at NuSkin, International located in Utah.  Docket No. 27.

[7] The testimony establishes that the conversation took place at a Thanksgiving dinner "after 2006".  Trial Tr. at 26.  As the trial was held in October, 2007, the Court infers that the Thanksgiving dinner in question was held in November, 2006.

[8] Saratoga opened its second World Gym location in Rexburg in the Fall of 2004.  Trial Tr. at 18.

MEMORANDUM OF DECISION - 7

made the offensive comments his "feelings were hurt" and he "made several comments . . . out of just spite and anger." Trial Tr. at 28-29.

Finally, immediately after having his deposition taken in 2007, Ball testified he talked with Colvin at the Idaho Falls airport and, apparently in an attempt to smooth over the situation with an eye toward repairing family relations, Colvin admitted to Ball that he had made several comments out of "spite and anger," that were "gonna hurt [Ball's] feelings." Trial Tr. at 28-29; 36. Additionally, he admitted that he felt he had breached the contract, and assumed that it was void. Trial Tr. at 42-43. He further expressed his belief that he was "glad to be out [of Saratoga Holdings] as of [May, 2004] since Saratoga Holdings has never turned a profit." Trial Tr. at 44.

On November 5, 2004, Colvin and his wife, Valaree Thueson Colvin, filed a voluntary joint chapter 7 petition.[9] Docket No. 1, ¶ 4. In their schedules, they list the unpaid $45,000 as an executory contract on

---

[9] Although a copy of the Debtors' bankruptcy petition and schedules are not a part of the record in the adversary proceeding, under Fed .R. Evid. 201(c), the Court may take judicial notice of its official docket, and under Fed. R. Evid. 801(d)(2), it may consider the statements made in Debtors' schedules as admissions. *In re Schweizer,* 354 B.R. 272, 278 n. 3 (Bankr. D. Idaho 2006); *In re Moore*, 01.4 I.B.C.R. 147, 149 n. 7 (Bankr. D. Idaho 2001).

MEMORANDUM OF DECISION - 8

Schedule G.[10]  In their Statement of Financial Affairs, in response to Question No. 21 soliciting the names of all current partners, officers, directors and shareholders, they listed Ball and Rammell, as well as their original interest percentages in Saratoga, *i.e.*, Ball at 40% and Rammell at 30%.  The Colvins also noted in their answer to Question No. 21(b) that "Debtor was the managing member" and that there "is a promissory note to buy out the debtors [sic] interest."

On March 30, 2007, Trustee filed this adversary proceeding to recover the $45,000 allegedly owed to Colvin under the terms of the May, 2004 contract.

### *Conclusions of Law and Disposition of the Issues*

For bankruptcy law purposes, the May, 2004 agreement between Colvin, Ball and Rammell is an "executory contract."  "The Bankruptcy Code furnishes no express definition of an executory contract, see 11 U.S.C. § 365(a), but the legislative history to § 365(a) indicates that Congress intended the term to mean a contract 'on which performance is

---

[10] The Court also notes that Debtors claimed the unexpired lease with Developers Diversified Realty on Schedule G with an amount listed as "increasing monthly payment of about 20000 [sic]".  Developers Diversified Realty holds the lease on the Idaho Falls World Gym facility.

MEMORANDUM OF DECISION - 9

due to some extent on both sides.'" *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 522 n. 6 (1984) (quoting H.R. Rep. No. 95-595, p. 347 (1977)).

When Debtors filed their bankruptcy petition, all parties to the May, 2004 contract had unfulfilled obligations to perform. Ball and Rammell, on the one hand, were obliged to make payments to Colvin on account of his interest in Saratoga, beginning on April 1, 2006. Colvin, in turn, had a continuing obligation under this agreement to not "hinder, delay, slander, or tarnish" Saratoga. Hence, both sides to this agreement had yet to fully perform under the contract, rendering it "executory" for purposes of § 365 of the Bankruptcy Code.

This conclusion is not only important under these circumstances, it dictates the outcome in this action. Section 365(a) allows a chapter 7 bankruptcy trustee to either "assume" or "reject" any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). However,

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract . . . of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.

MEMORANDUM OF DECISION - 10

11 U.S.C. § 365(d)(1).  Rule 6006 provides that a request by a trustee to assume an executory contract is governed by Rule 9014, which in turn requires that such request be "by motion."

Synthesizing the operation of these Code provisions and Rules to the facts of this case, if Plaintiff intended to assume and enforce the executory May, 2004 contract, he should have requested such relief by appropriate motion filed within 60 days after the filing of Debtors' bankruptcy petition,[11] or he must have at least sought an extension of time to do so within that 60 days.  Plaintiff did neither.  A review of the docket in the bankruptcy case reveals neither a motion to assume the contract, nor a motion for an extension of time in which to do so.  Therefore, pursuant to § 365, the contract is deemed rejected by operation of law.  11 U.S.C. § 365(d)(1); *Unsecured Creditors' Comm. Of Robert L. Helms Constr. & Dev. Co. v. Southmark Corp. (In re Robert L. Helms Constr. and Dev. Co., Inc.)*, 139 F.3d 702, 706 n. 10 (9th Cir. 1998); *Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ, L.L.C.)*, 371 B.R. 412, 423 (9th Cir. BAP 2007); *In re Hunter Mfg., Inc.*, 95 I.B.C.R. 188, 189

---

[11] In a voluntary bankruptcy case, the filing of the petition constitutes an "order for relief."  11 U.S.C. § 301(b).

MEMORANDUM OF DECISION - 11

(Bankr. D. Idaho 1995). Because Plaintiff did not timely assume it, the May, 2004 contract was "deemed rejected" by operation of law under § 365(d).

When a contract has been deemed rejected, a trustee may not thereafter seek to enforce its terms against the other parties to that agreement. Instead, under the Code, the rejection of an executory contract constitutes a breach of the contract. 11 U.S.C. § 365(g); *First Ave. W. Bldg., LLC v. Nancy James (In re Onecast Media, Inc.)*, 439 F.3d 558, 563 (9th Cir. 2006); *In re TSB, Inc.*, 03.4 I.B.C.R. 220, 221 n. 9 (Bankr. D. Idaho 2003) (citing *Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.)*, 27 F.3d 401, 402-03 (9th Cir. 1994)). And if an executory contract has not been previously assumed, the breach flowing by operation of law from the rejection is deemed to have occurred "immediately before the date of the filing of the petition . . . ." 11 U.S.C. § 365(g)(1).

Plaintiff may not simply overlook the substantive and procedural requirements of the Code and Rules. Assumption of an executory contract – in this situation, a condition to its enforcement against the other party – requires bankruptcy court approval, which is only appropriately given

MEMORANDUM OF DECISION - 12

"upon proof of satisfaction of certain prerequisites regarding cure of defaults and adequate assurance of future performance." *In re Heitman*, 99.3 I.B.C.R. 107, 107 (Bankr. D. Idaho 1999); *Lindsey v. Dept. of Labor (In re Harris Mgmt. Co., Inc.)*, 791 F.2d 1412, 1414-15 (9th Cir. 1986); 11 U.S.C. § 365(b)(1(A). Here, there are substantial questions concerning whether Colvin had already defaulted under the terms of the May, 2004, contract when he and his spouse filed their bankruptcy petition in November, 2004. If so, the Court has doubts whether Plaintiff could have cured that default or adequately assured that Colvin would perform the contract as agreed in the future.[12] The mechanism provided under § 365 and the Rules requiring a prompt decision on whether, and upon what conditions, an executory contract may be assumed by a trustee, would have fleshed out those issues at an early date in this case.

---

[12] There is also a serious issue in this case whether this particular executory contract could have been assumed by Plaintiff, since Colvin's duties under that agreement (to refrain from acting in a certain fashion) may have been akin to those involved in a personal services agreement, a type of executory contract that, under the Code, simply may not be assumed by a trustee. *See* 11 U.S.C. § 365(c)(1)(A) (providing that an executory contract may not be assumed if "applicable law excuses a party, other than the debtor, . . . from accepting performance from . . . an entity other than the debtor . . . .")

MEMORANDUM OF DECISION - 13

In sum, because Plaintiff, as trustee, did not timely assume the May, 2004 contract within the 60-day period after the petition was filed as required by the Code and Rules, it was deemed rejected by operation of law. That rejection constituted a breach of the contract immediately before Debtors' bankruptcy petition was filed, which breach therefore precludes Plaintiff's attempts to enforce the contract against Ball and Rammell at this time.

### *Conclusion*

Defendants are entitled to judgment in this action. Plaintiff's Complaint against them will be dismissed. Counsel for Defendants shall prepare and submit an appropriate form of judgment for entry by the Court. Counsel for Plaintiff shall approve the form of judgment.

Dated: December 20, 2007

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge