# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re<br><br>MICHAEL S. COLVIN and<br>VALAREE THUESON COLVIN,<br><br>**Debtors.** | **Bankruptcy Case<br>No.  04-42331-JDP** |

_____

| | |
|---|---|
| R. SAM HOPKINS, TRUSTEE,<br><br>**Plaintiff,**<br>vs.<br><br>SARATOGA HOLDINGS, LLC,<br>an Idaho limited liability<br>company; JASON R. RAMMELL<br>and BRIAN BALL, members,<br><br>**Defendants.** | **Adv. Proceeding No. 07-8045** |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Lane Erickson and Daniel Green,  RACINE OLSON NYE BUDGE &
BAILEY, Pocatello, Idaho, Attorneys for Plaintiff.

MEMORANDUM OF DECISION - 1

Steven W. Boyce, JUST LAW OFFICE, Idaho Falls, Idaho, Attorney for Defendants.

## *Introduction*

In this adversary proceeding, Defendant, Saratoga Holdings, LLC ("Saratoga") seeks an award of attorneys' fees and costs. Plaintiff, chapter 7[1] trustee, R. Sam Hopkins ("Trustee"), objects to this request. The fees and costs were incurred defending against Trustee's unsuccessful claim to recover damages from Saratoga for an alleged breach of contract. After a hearing concerning Saratoga's request and Trustee's objection, the Court took the issues under advisement. This Memorandum constitutes the Court's findings of fact and conclusions of law. Rule 7052.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9036, as they existed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 108-9, 119 Stat. 23 (April 20, 2005), because Debtor's bankruptcy case was commenced prior to BAPCPA's effective date of October 17, 2005.

MEMORANDUM OF DECISION - 2

*Facts*[2]

Michael Colvin, Jason Rammell, and Brian Ball formed Saratoga to operate a World Gym franchise in eastern Idaho. Since its inception in July 2003, the company required additional capital infusions from the owners.[3] As time progressed, it became apparent that Colvin was unable to satisfy calls for new capital, and the other owners began to make up the difference. In May, 2004, all three owners met to discuss the situation, at which point Colvin apparently expressed a desire to be relieved of his financial obligations to Saratoga.

In an attempt to remedy the predicament, Saratoga and Colvin reached an agreement in which Saratoga would purchase Colvin's equitable interest in the company for $45,000. Rammell drafted a contract

---

[2] To give context to the discussion that follows, several facts as found in the Court's decision disposing of the merits of Plaintiff's claim, dated December 20, 2007, are repeated. Additional relevant facts are also set forth.

[3] Each owner was expected to make additional capital contributions according to their ownership interest in Saratoga. Initially, Colvin and Rammell each held a 30 percent equity interest in Saratoga and Ball held a 40 percent equity interest.

MEMORANDUM OF DECISION - 3

to memorialize the terms of the agreement, which was signed by Colvin,

Ball, and Rammell on May 25, 2004. The contract provided that the

$45,000 purchase price would be paid by Saratoga to Colvin in 36 monthly

payments commencing on April 1, 2006. However, the contract also

provided that:

> It is specifically agreed by both parties that the
> ongoing success of the business is vital to the
> performance of this contract. Therefore, it is
> mutually agreed that Michael Colvin, his agents,
> assigns and immediate family members will do
> nothing to hinder, delay, slander or tarnish in any
> way the reputation of Saratoga Holdings, its
> owners or agents. It is further mutually agreed
> that violation of this clause is grounds for
> termination of this contract. It is further mutually
> agreed that from the date of this contract Michael
> Colvin, his agents or assigns, does hereby rescind
> any ownership interest he may have in Saratoga
> Holdings.

Docket No. 31, Ex. 2.

On November 5, 2004 Colvin and his wife, Valaree Thueson Colvin,

filed a voluntary petition for relief under chapter 7 of the Bankruptcy

Code. Trustee was appointed to serve as chapter 7 trustee. In their

MEMORANDUM OF DECISION - 4

schedule G, the Colvins listed Saratoga's obligation to pay them the

$45,000 as an executory contract.  On March 30, 2007, Plaintiff commenced

this adversary proceeding to recover the $45,000 principal balance plus

interest from Saratoga, alleging that it had breached the contract.

Following a trial, the Court concluded that the contract was

executory in nature, and that since Trustee had failed to assume it in the

bankruptcy case within 60 days of the filing of the petition, it was deemed

rejected by operation of law.  *See* 11 U.S.C. § 365(d)(1); *Unsecured Creditors'*

*Comm. of Robert L. Helms Constr. & Dev. Co. v. Southmark Corp. (In re Robert*

*L. Helms Constr. & Dev. Co., Inc)*, 139 F.3d 702, 706 n. 10 (9th Cir. 1998);

*Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412, 423 (9th

Cir. BAP 2007); *In re Hunter Mfg., Inc.*, 95 I.B.C.R. 188, 189 (Bankr. D. Idaho

1995).  Under the Code, the rejection of an executory contract constitutes a

breach of the contract immediately before the filing of the petition.  *See* 11

U.S.C. § 365(g)(1).  Thus, the Court concluded that Trustee's failure to

assume the contract and the resulting breach precluded Trustee from

enforcing the contract against Saratoga.

MEMORANDUM OF DECISION - 5

Following the Court's decision, on January 2, 2008, Saratoga filed a Memorandum of Fees and Costs, together with a supporting affidavit and itemization of fees. Docket 38. In this pleading, Saratoga requested that it be awarded attorneys' fees in the amount of $8,465.09 and costs in the amount of $409.09.[4]

Trustee objects to the claim for both the attorneys' fees and the costs. Docket 39. Trustee argues that Saratoga has no contractual or statutory basis to recover attorneys' fees. In addition, Trustee challenges whether the costs should be allowed under the local bankruptcy rules.

In response, Saratoga amended the Memorandum of Fees and Costs. Docket 43. The amendment deletes the request for reimbursement for the trial transcript, provides a more detailed description of the request for deposition expenses, and adds an additional deposition expense in the amount of $502.75.

---

[4] Saratoga's request listed two items under the cost category. The first was simply marked "Deposition expense" in the amount of $341.49. The second was for a copy of the trial transcript, in the amount of $67.60.

MEMORANDUM OF DECISION - 6

### *Discussion*

### I.

Prior to last year, in this Circuit, parties could not recover attorney's fees and costs incurred in litigating issues of bankruptcy law.  *Fobian v. W. Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir. 1991).  But, in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, __ U.S. __, 127 S.Ct. 1199 (2007), the Supreme Court rejected the rule announced in *Fobian*.  While deciding that a request for recovery of contractual attorney's fees could not be rejected simply because those fees had been incurred in bankruptcy litigation, the Court expressly declined to decide whether Travelers' attorneys fees could be recovered under the facts of that case, remanding that question to the Ninth Circuit for further proceedings.  The Ninth Circuit has not yet announced its decision on remand.

The Supreme Court's decision in *Travelers* does not precisely control whether Saratoga's claim for attorney's fees in this action is appropriate. However, Saratoga notes that in *Centre Ins. Co. v. SNTL Corp. (In re SNTL Corp.)*, 380 B.R. 204 (9th Cir. BAP 2007), the bankruptcy appellate panel has

MEMORANDUM OF DECISION - 7

provided guidance on the issue.  In that post-*Travelers* decision, the BAP

concluded that a litigant could recover attorneys' fees incurred during

litigation in a bankruptcy case from a chapter 11 debtor where the parties'

prebankruptcy contract so provided.  *Id.* at 221.  And while Saratoga

concedes the contract at issue in this action did not contain a provision

authorizing the recovery of litigation costs, in the last sentence of the *SNTL*

*Corp.* opinion, the panel directed that the action be "REMAND[ED to the

bankruptcy court] for a determination of whether Centre is entitled to the

fees under the relevant contracts *or state law*."  *Id.* at 223 (emphasis added).

Thus, Saratoga contends, in addition to endorsing the enforcement of

contractual provisions allowing recovery of  attorneys' fees in bankruptcy

litigation, *SNTL Corp.* opens the door for bankruptcy courts to award

attorneys' fees whenever authorized by an  applicable state statute.

    *SNTL Corp.* was the first appellate decision to address the question

left open by *Travelers* - whether post-petition attorneys' fees can be added

MEMORANDUM OF DECISION - 8

to an unsecured creditor's claim in a bankruptcy case.[5]  A brief review of

the facts of *SNTL Corp.* is appropriate here.

Prior to filing for bankruptcy relief, SNTL Corp. guaranteed the

performance of its affiliates' obligations to Centre Insurance Company

("Centre").  The sophisticated agreements between the parties provided

for the recovery of all reasonable expenses, including attorneys' fees,

incurred in connection with the enforcement of the guarantees.  The

affiliates defaulted on their obligations to Centre, and all parties reached

an agreement whereby the affiliates would pay Centre $163.4 million in

satisfaction of an obligation of $180 million and Centre would

simultaneously release the guarantor, SNTL Corp.

Thereafter, the California Insurance Commissioner placed the

affiliates into conservation, and then liquidation, and sought recovery of

the $163.4 million payment as a state law preference.  In settlement of the

Commissioner's preference action, Centre returned $110 million.  Centre

---

[5]   The BAP's decision in *SNTL Corp.* was appealed to the Ninth Circuit
where it awaits consideration.

MEMORANDUM OF DECISION - 9

then sought to revive SNTL Corp.'s liability as guarantor and recover the

returned amount.

SNTL Corp. and its affiliates filed chapter 11 petitions for relief on

April 26, 2000.  Centre filed a proof of claim in excess of $294 million

(including approximately $3 million in attorneys' fees).  The trustee

appointed in the chapter 11 case objected to the claim, arguing, *inter alia*,

that as an unsecured creditor, Centre's claim for attorneys' fees incurred

post-petition should not be allowed.  Following a hearing, the bankruptcy

court disallowed the claim for attorney's fees.

On appeal, the BAP reversed the bankruptcy court's decision.  The

panel explained that the parties' pre-petition agreement containing an

attorneys' fees provision gave rise to a contingent, unliquidated unsecured

claim for the attorney's fees.  Thus, the panel held, "attorneys' fees arising

out of a prepetition contract but incurred postpetition fall within the

Bankruptcy Code's broad definition of claim."  *In re SNTL Corp.*, 380 B.R.

at 221.  Although the decision in *SNTL Corp.* provides a thoughtful

discussion of an intriguing issue involving attorneys' fees, it is

MEMORANDUM OF DECISION - 10

distinguishable, and therefore of little help resolving the issue before this

Court.

In *SNTL Corp.*, as the panel explained, the claimant held a

contingent, unliquidated claim prior to the date the bankruptcy petition

was filed by the debtor by virtue of the very specific attorneys' fee

provision in the parties' pre-petition contract.  The claimant filed a proof of

claim, but continued to incur additional fees post-petition.  Simply put, the

question addressed in *SNTL Corp.* was whether the claimant could include

those additional fees incurred post-petition as part of its pre-petition claim.


This is a very different case.  Here, although Saratoga and Colvin

executed their contract prior to Colvin's bankruptcy, it did not contain a

provision for attorneys' fees.  On the date the petition was filed, Saratoga

did not have a contingent, unliquidated claim based upon the contract.[6]

Thus, Saratoga is not attempting to add attorneys' fees and costs incurred

---

[6]  Indeed, Saratoga has never filed a proof of claim in Colvin's bankruptcy
case.

MEMORANDUM OF DECISION - 11

in connection with proceedings during the bankruptcy case to a claim that

existed pre-petition.  Instead, Saratoga is  asserting a new claim, one that

did not exist on the date the bankruptcy was filed.

II.

A.

While *Travelers* is not directly applicable, and *SNTL Corp.* is

distinguishable because Saratoga and Colvin's prebankruptcy contract

contained no provision for recovery of attorneys' fees and costs in the

event of litigation between the parties, the Court's inquiry is not over.

Here, Saratoga argues it should be awarded fees and costs under

applicable state law.  The Ninth Circuit has long held that "[w]hen a

bankruptcy court adjudicates a dispute arising from a contract claim, it

must apply state law unless the bankruptcy code provides otherwise."

*Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*, 749 F.2d 1277, 1280

(9th Cir. 1984).  In particular, the court has instructed that state law

governs a party's right to recover attorneys' fees in bankruptcy litigation if

state law, and not federal bankruptcy law, provides the rule of decision in

MEMORANDUM OF DECISION - 12

the action.  *Krommenhoek v. A-Mark Precious Metals, Inc. (In re Bybee)*, 945

F.2d 309, 315 (9th Cir. 1991).

 The outcome in this action, though, involved an application of both

state and federal bankruptcy law.  Here, Trustee's claim against Saratoga

was to enforce Saratoga's obligations under the contract to pay Colvin,

which it refused to do – a claim based solely upon the state law principles

of breach of contract.  However, the disposition made by the Court was

grounded on an interplay of state law with the Bankruptcy Code.  Because

Trustee failed to timely assume the Saratoga-Colvin contract, as a matter of

bankruptcy law, it was deemed rejected under § 365(d)(1).  Under § 365(g),

the rejection of an executory contract constitutes a breach of the contract.

And, because of the breach, under state law, Trustee was precluded from

enforcing the contract against Saratoga.

 Despite the hybrid nature of the law applied to dispose of the issues,

the Court concludes that state law should govern the award of attorneys'

fees.  At bottom, both the legal basis relied on for Trustee's claim against

Saratoga, and the reason that Trustee's suit ultimately failed, were

MEMORANDUM OF DECISION - 13

grounded in state contract law.  Accordingly, Idaho law should govern the award of attorneys' fees in this case.

B.

It is well established that "[a] party claiming attorney's fees must assert the specific statute, rule, or case authority for its claim." *MDS Invs., LLC v. State of Idaho*, 65 P.3d 197, 206 (Idaho 2003).  Saratoga's Memorandum of Fees and Costs does not set forth any grounds upon which recovery of its litigation costs are warranted.  However, at the hearing, Saratoga's counsel identified Idaho Code § 12-120(3) as the basis of its request.  That statute provides, in pertinent part:

> In any civil action to recover on . . . any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.
> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes.

Idaho Code § 12-120(3).

MEMORANDUM OF DECISION - 14

If Saratoga was the prevailing party in an action to recover on a commercial transaction, then an award of attorneys' fees is mandatory. *Clement v. Franklin Inv. Group, Ltd.*, 689 F. Supp 1575, 1577 (D. Idaho 1988) ("The Idaho Supreme Court has made it clear that Idaho Code § 12-120 is mandatory in its nature and has rejected an attempt by a trial judge to impose his own sense of justice in denying the mandatory award.").

Whether an award of attorneys' fees under this statute is proper here involves a multi-tiered analysis. Initially, the Court must determine who was the prevailing party and whether the adversary proceeding involved a commercial transaction. The answer to the first question is clear, as it can not be disputed that Saratoga was the prevailing party in the lawsuit. *Iron Eagle Dev., LLC v. Quality Design Sys., Inc.*, 65 P.3d 509, 515 (Idaho 2003) (Having successfully defended against claims for breach of contract, defendants were the prevailing party and entitled to recover attorneys' fees.). With respect to the second question, Saratoga asserts that this action clearly involved a commercial transaction. The Court agrees.

MEMORANDUM OF DECISION - 15

Commercial transactions are broadly defined in the state statutes to
include all transactions except those for personal or household purposes.
Idaho Code § 12-120(3).  Here, the Colvin-Saratoga contract was executed
to implement the transfer of Colvin's equitable interest in the LLC to
Saratoga, which entity owned and operated commercial health clubs.  The
agreement did not promote either party's personal or household purposes;
its goal was to protect the business and corporate interests of Colvin and
Saratoga.  Thus, the Saratoga-Colvin contract was indeed a commercial
transaction.

Even so, "[an] award of attorney fees [under Idaho Code § 12-120(3)]
is not warranted every time a commercial transaction is remotely
connected with the case.  Rather, the test is whether the commercial
transaction comprises the gravamen of the lawsuit."  *Brower v. E.I. DuPont
De Nemours & Co.*, 792 P.2d 345, 349 (Idaho 1990).  To make that
determination, the Idaho courts have engaged in a two-stage analysis.  *Iron
Eagle Dev.*, 65 P.3d at 515.  "First, the commercial transaction must be
integral to the claim, and second, the commercial transaction must provide

MEMORANDUM OF DECISION - 16

the actual basis for recovery." *Id.*, citing *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 36 P.3d 218, 223 (Idaho 2001).

Both prongs of this test are satisfied. It is difficult to imagine how the commercial transaction at issue in this action (*i.e.*, the Saratoga-Colvin contract) could be any more integral to Trustee's claim; his suit against Saratoga was premised upon his allegation that Saratoga had breached that contract. And by failing to timely assume the contract as required by the Bankruptcy Code, the contract was deemed to have been breached, which therefore precluded Trustee from recovering. Thus, the commercial transaction also provided the basis for recovery.

## C.

Having concluded that Saratoga was the prevailing party in an action to recover on a commercial transaction, an award of reasonable attorneys' fees is mandatory. But while the award of attorneys' fees is mandatory, the amount thereof is subject to the Court's discretion. *See P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 159 P.3d 870 (Idaho 2007). The procedural rule applicable to determinations of reasonable attorney's

MEMORANDUM OF DECISION - 17

fees[7] directs the court to consider several criteria in setting the amount of

fees to be awarded to the prevailing party.

Saratoga has requested an award of attorney's fees in the amount of

$8,465.09.  To support its request, Saratoga submitted the affidavit of its

attorney and an itemization of time spent and services provided.  The

Court has considered counsel's affidavit and the itemization, as well as the

---

[7] Idaho Rule of Civil Procedure 54(e)(3) provides:

> Amount of Attorney Fees.  In the event the court
> grants attorney fees to a party or parties in a civil
> action it shall consider the following factors in
> determining the amount of such fees: (A) The time
> and labor required.  (B) The novelty and difficulty of
> the questions.  (C) The skill requisite to perform the
> legal service properly and the experience and ability
> of the attorney in the particular field of law.  (D) The
> prevailing charges for like work.  (E) Whether the fee
> is fixed or contingent.  (F) The time limitations
> imposed by the client or the circumstances of the case.
> (G) The amount involved and the results obtained.
> (H) The undesirability of the case.  (I) The nature and
> length of the professional relationship with the client.
> (J) Awards in similar cases.  (K) The reasonable cost of
> automated legal research (Computer Assisted Legal
> Research), if the court finds it was reasonably
> necessary in preparing a party's case.  (L) Any other
> factors which the court deems appropriate in the
> particular case.

MEMORANDUM OF DECISION - 18

factors specified in the Idaho rules, and concludes that a reduced award is warranted.

In this adversary proceeding, Trustee sought to recover $45,000 plus interest from Saratoga for the alleged breach of contract. The contract itself is rather simple; the entire document, including recitals and the signatures of the three LLC members, is contained on a single page.[8]

Saratoga agreed to pay its counsel $175 per hour. While perhaps at the high end of the range for legal services in eastern Idaho, this rate appears reasonable. Moreover, as a result of counsel's efforts, a very favorable result for Saratoga was obtained, as Trustee was not allowed to enforce the contract by virtue of his failure to timely assume it in the bankruptcy case. Despite this good result, the Court can not in good conscience award all the fees requested, but must instead address the numerous problems apparent from the itemization of services and fees submitted by counsel.

---

[8] The contract at issue was drafted by Rammell, an attorney and part-owner of Saratoga.

MEMORANDUM OF DECISION - 19

The form of the itemization is adequate.  Docket 38, Ex. A.  It includes a heading, individual entries with the date, the description of the service performed, the time required, and a total charge for the service broken out into separate columns, and at the end, a figure representing the total amount billed for the legal services.  However, it is the substance of the information in the form - or the lack thereof in many instances - which gives the Court pause.

The form contains a total of 133 entries, most of which contain one or more apparent errors.  Indeed, over half of the entries fail to list how much time was expended in providing the service described.[9] Approximately 30% of the entries are too cryptic to provide an adequate description of the service provided, making it nearly impossible for the

_____

[9] Despite the high percentage of entries with this omission, this deficiency does not prevent the Court from evaluating most entries because the amount of time spent for each entry can be calculated by dividing the total charge for the entry by the $175 hourly rate.  While the Court can "figure it out," this approach should be disfavored, as it requires unnecessary analysis by the Court.

MEMORANDUM OF DECISION - 20

Court to determine whether the services were reasonable and necessary.[10]

In several instances, services have been lumped together in a single time

entry.  Listing only the total charge for lumped services deprives the Court

of the ability to weigh the reasonableness of either the amount of time

spent or the amount charged for the individual services.[11]

Although some of the inadequacies with the itemization amount to

little more than mere technical annoyances, the bulk of the problems, in

the Court's view, are serious substantive deficiencies.  Considering these

factors, together with those listed in Idaho Rule of Civil Procedure 54(e)(3),

the Court concludes that Saratoga has not shown it is entitled to the full

amount of attorneys' fees that it requested.  Instead, the Court finds that

$5,787.59[12] represents a reasonable award of attorneys' fees in this case.

_____

[10] One example is the entry for June 20, 2005, which lists "Telephone Call -
Message."  This example and others fail to apprise the Court of the reason for the
call.

[11] Furthermore, many of the service descriptions contain ellipses,
requiring the Court to speculate as to what services may have been omitted from
that entry.

[12] To arrive at this figure, the Court began with the total amount
requested ($8,465.09) and deducted the amounts listed for entries with

MEMORANDUM OF DECISION - 21

III.

As previously mentioned, on March 19, 2008, Saratoga filed an amended memorandum of costs, seeking recovery for the expenses it incurred in connection with certain depositions.  At the hearing, Trustee's counsel noted that he had just received the amendment, and that he had not yet had a fair chance to analyze it.  However, based upon what he heard in court, Trustee's counsel did not believe Trustee had any further objection to costs.  No further objection by Trustee was filed.  Therefore, the Court's independent review of whether the claimed costs are appropriate follows.

Costs are a procedural matter, taxed under Local Bankruptcy Rule 7054.1.  *Thomason Farms, Inc. v. Tri-River Chemical Co. (In re Thomason Farms, Inc.)*, 02.2 I.B.C.R. 107, 109 (Bankr. D. Idaho 2002).  To comply with LBR 7054.1(a), a cost bill must itemize costs and be supported by a certificate of counsel attesting that the costs are correctly stated, were necessarily

---

inadequate descriptions ($997.50) as well as the entries which lumped services ($1,680) to arrive at the final figure ($5,787.59).

MEMORANDUM OF DECISION - 22

incurred, and are allowed by law.  Under LBR 7054.1, taxable costs

include: clerks' fees and service fees; costs of trial or other transcripts if

requested by the Court or prepared pursuant to stipulation; deposition

costs; witness fees, mileage and subsistence; costs of reproducing exhibits;

costs of maps, diagrams and charts; and other costs with prior court

approval.  To aid attorney compliance with this rule, a form cost bill

accompanies the local rule.[13]

Saratoga did not use the standard form.  However, its amended

memorandum of costs does itemize the costs sought.  Docket No. 43.  The

amended memorandum attests that the costs are "incurred as part of the

above-captioned adversary proceeding."  *Id.*  Furthermore, at the hearing,

Saratoga's counsel explained that, as amended, the memorandum

complies with the local rule.  The Court concludes, especially in the

---

[13]  This form, among others, can be located on the Court's website at
http://www.id.uscourts.gov.

MEMORANDUM OF DECISION - 23

absence of any objection by Trustee,[14] that these representations satisfy the

certification requirements of LBR 7054.1(a).

When the prevailing party in an action is the noticing party to a

deposition used for any purpose in connection with the case, the cost of

the original deposition transcript plus one copy is recoverable.  LBR

7054.1(c)(3).  If the prevailing party was not the noticing party, then only

the cost of a copy of the deposition is recoverable.  *Id.*  Attorneys' fees

incurred in arranging for and taking a deposition are not taxable.  *Id.*

Saratoga's amended memorandum of costs indicates that Saratoga

was the noticing party of Colvin's deposition, and that Trustee was the

noticing party of Ball's deposition.  Saratoga requests costs for the original

and one copy of Colvin's deposition, and for one copy of Ball's deposition.

This request is consistent with the local rule, and will be allowed.

### *Conclusion*

---

[14]  To be precise, Trustee did object to the original memorandum of fees
and costs filed by Saratoga.  Docket No. 39.  However, that objection did not
address the certification requirement of LBR 7054.1(a).  Trustee's objection only
questioned the adequacy of what Saratoga labeled "Deposition expense" and the
fee for a copy of the trial transcript.

MEMORANDUM OF DECISION - 24

For the reasons set forth above, Saratoga, as the prevailing party in an action to recover on a commercial transaction, is entitled to an award of reasonable attorneys' fees pursuant to Idaho Code § 12-120(3). By separate order, the Court will approve an award to Saratoga of $5,787.59. Further, in that order, Saratoga will be allowed to recover costs in the amount of $844.24 pursuant to LBR 7054.

Dated: May 2, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 25